AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

FILED by INTAKE __ D.C.
JUL 25 2003
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · FT. LAUD.

UNITED STATES OF AMERICA

V.

JOSE BETANCOURT

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 03-4110-BSS

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about July 24, 2003 in Broward county, in the Southern District of Florida defendant(s), (Track Statutory Language of Offense)

a federally licenced firearms dealer did knowingly and willfully sell and deliver firearms to another person without noting in his records required to be kept pursuant to Title 18, United States Code, Section 923 the name, age and place of residence of such person; and did knowingly make a false entry in, and fail to make appropriate entry in and fail to properly maintain a record which he is required to keep pursuant to Title 18, United States Code, Section 923

in violation of Title 18 United States Code, Section(s) 922(b)(5) and 922(m)

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:
                              Official Title

Please see attached affidavit.

Continued on the attached and made a part hereof:  [x] Yes  [ ] No

Signature of Complainant
Pamela Bradley
Special Agent, ATF

Sworn to before me, and subscribed in my presence,

July 25, 2003                                  at   Ft. Lauderdale, FL
Date                                                City and State

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer              Signature of Judicial Officer

## AFFIDAVIT

I, Pamela J. Bradley, being duly sworn, do hereby depose and state:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms (ATF) and have been so employed for more than thirteen years. I received the following information in my official capacity as a result of both my own investigation and that of other law enforcement officer. This Affidavit summarizes but does not detail every fact, which is known to your affiant regarding this case.

2. In December, 2002, an investigation was initiated after the receipt of information from the ATF Colombia Country Office indicating that approximately seven (7) firearms, recovered from members of the Revolutionary Armed Forces of Colombia (FARC), had been traced to three individuals in Broward County, Florida. All of the firearms had been purchased from J.B.'s Gunsmith and Sales, 3300 Saint James Avenue, Deltona, Florida.

3. On January 31, 2003, an ATF inspection was conducted at the business premises of Federal Firearms Licensee # 1-59-127-07-4D-39580, JOSE BETANCOURT ("BETANCOURT"), doing business as J.B.'s Gunsmith and Sales, 3300 Saint James Avenue, Deltona, Florida. This inspection revealed that BETANCOURT had transferred at least 150 Bushmaster semi-automatic rifles to one of the individuals in Broward County, hereinafter identified as "the CS"

4. On February 2003, CS was interviewed by ATF Special Agents Pamela Bradley and Steve McKean in Fort Lauderdale, Florida. The CS told Agents Bradley and McKean that the CS's friend, Christopher Noble, had died in October 2001. Prior to his death, Noble had been purchasing firearms from BETANCOURT and transferring them to an individual by the name of Carlos LNU (last name unknown) who stated that the firearms were for farmers in the country of Colombia. These transactions occurred multiple times over the course of several years. Eventually BETANCOURT and Noble discussed the fact that Noble's name was appearing too frequently on the forms that ATF requires the dealer to maintain. This form (ATF Form 4473) reflects the personal information and identification of the purchaser as well as identifying information of the purchased firearms. BETANCOURT suggested that Noble recruit other persons to begin filling these forms out when a purchase was made. Following that conversation, Noble asked the CS and one other individual to assist in filling out the forms. The three began alternating the duty of signing the ATF Form 4473 each time a transaction occurred.

5. Several months after Noble died, Carlos LNU contacted The CS and stated that he would be arranging for funds to be delivered to the CS so that the CS could order more firearms for him. Several transactions occurred over the course of the calendar year 2002, with the last one occurring in approximately December 2002. On each occasion the firearms were purchased from BETANCOURT. The CS stated that the last transaction involved approximately 13 rifles and that BETANCOURT did not provide her with any of the forms

required for purchase of these guns. BETANCOURT told the CS that he had a person in his area who would falsely fill out and sign the required paperwork. The CS also related that BETANCOURT was aware that the firearms were being purchased on behalf of another individual who was taking the firearms to farmers in the country of Colombia. The CS said that the CS had personally participated in discussions with BETANCOURT to this effect.

6. On June 16, 2003, the CS was contacted by Carlos LNU who stated that he would have someone deliver to the CS the funds to purchase fifty rifles for him. The CS agreed to assist ATF agents by receiving the money and placing the order with BETNACOURT.

7. On June 17, 2003, two unidentified Latin males came to the residence of the CS and delivered to her a box containing $65,760.00 in U.S. currency. The delivery of the money was surveilled by federal agents.

8. On June 30, 2003, the CS contacted BETANCOURT and told him that The CS had received the funds to place an order for 50 rifles. BETANCOURT responded that he would be down on July 1, 2003 to receive the money and subsequently place the order.

9. On July 1, 2003, Jose BETANCOURT arrived at the residence of the CS and received $26,750, a 50% down payment for the purchase of fifty assault rifles. At this time, the CS told BETANCOURT that the CS did not want to fill out any forms because the CS did not want the CS's name being associated with any additional firearms. BETANCOURT explained that the CS had nothing to

worry about and reiterated that he had other persons that he employed to falsely fill out the forms.

10. On July 24, 2003, BETANCOURT arrived at the CS' residence in Pompano Beach, Florida and delivered 50 firearms in exchange for the remaining $26,750. BETANCOURT was arrested by ATF agents at the scene. At the time of his arrest BETANCOURT had a partially completed, but signed, ATF form 4473 identifying someone other than the CS as the purchaser of the firearms.

11. BETANCOURT was advised of his Miranda rights and agreed to make a statement to the arresting agents. BETANCOURT admitted that he had sold approximately 150-200 firearms to the CS and at least the same amount to Christopher Noble. BETANCOURT admitted that he knew that the CS and Noble were purchasing the firearms on behalf of another person. He stated that he had used friends to falsely complete the required ATF forms.

12. Based upon the foregoing facts, I believe probable cause exists to believe that the defendant, JOSE BETANCOURT, a federally licensed firearms dealer did knowingly and willfully sell and deliver firearms to another person without noting in his records required to be kept pursuant to Title 18, United States Code, Section 923, the name, age and place of residence of such person; and did knowingly make a false entry in, and fail to make appropriate entry in and fail to properly maintain a record which he is required to keep  pursuant to Title

18, United States Code, Section 923 in violation of Title 18, United States Code, Sections 922(b)(5) and 922(m)

FURTHER AFFIANT SAYETH NAUGHT.

_____
Pamela J. Bradley, Special Agent
Bureau of Alcohol, Tobacco & Firearms

Subscribed to and sworn before me this 25TH day of July 2003.

_____
Barry S. Seltzer
United States Magistrate Judge

5